**DAVID K. BERTAN**
ATTORNEY AT LAW
888 GRAND CONCOURSE, SUITE 1N
BRONX, NEW YORK 10451

(718) 742-1688
FAX (718) 585-8640
E-MAIL: DBERTAN@YAHOO.COM

November 25, 2015

**Via ECF**

Hon. Kimba M. Wood
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        RE:    USA v. Calovskis
                  12-Cr-487 (KMW)

Dear Judge Wood:

On September 4, 2015 Mr. Calovskis appeared before the Hon. Gabriel W. Gorenstein and pleaded guilty to conspiracy to commit computer intrusion under Count 3 of the indictment in violation of 18 USC § 1030 (a)(5)(A) and 1030 (b). Sentencing is scheduled for December 14, 2015 at 12:00 PM. I am writing this letter, pursuant to Fed. R. Crim. Proc. 32, to advise this Court of the factors in this case that support a sentence of time served. As detailed below, those factors include information about Mr. Calovskis, the fact that he has already served over 10 months in jail in Latvia while awaiting extradition, and that he has been incarcerated in the U. S. for 10 months.

## THE GUIDELINES CALCULATION

**Mr. Calovskis' Guidelines Level**

As shown by his statements during the change of plea hearing, Mr. Calovskis admitted to participating in a conspiracy to commit computer intrusion. Under USSG § 2B1.1 (a)(2), the base offense level is 6. No loss amount can be attributed to Mr. Calovskis, so there is no increase under § 2B1.1 (b)(1). However, because the offense involved more than 250 victims, the offense level is increased by 6 (2B1.1 (b)(2)); because a substantial part of the scheme occurred outside the United States, the offense level is increased by 2 (2B1.1(b)(10); and because Mr. Calovskis was convicted of an offense under 18 USC §1030 (a)(5)(A), the offense level is increased by 4.

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 2

Given Mr. Calovskis' clear and unequivocal acceptance of responsibility, made in a timely manner, he is entitled to a 3 level deduction in accordance with USSG §§ 3E1.1 (a) and (b). Accordingly, the total Guidelines offense level applicable in this case is 15.

The Probation Department's Pre-Sentence Report has a different, lower result. The reason for the difference is as follows: the version of the Sentencing Guidelines in effect at the time of the plea was the 2014 edition, while Probation relies upon the 2015 version. The current version carries different and lower offense levels for certain aspects of fraud crimes, which result in a lower total offense level (*See* PSR paragraphs 31-42). According to Probation, the adjusted offense level in this case is 12, with an advisory sentencing range of 10 to 16 months. The difference comes into play under 2B1.1 (b)(2)(A), which under the new Guidelines adds only 2 levels, rather than the 6-level increase under the 2014 Guidelines. In addition, because the adjusted offense level is less than 16, the 1-level decrease under 3E1.1(b) for timely acceptance of responsibility does not apply.

### Mr. Calovskis' Criminal History Category

Mr. Calovskis has no criminal convictions. Based on the foregoing, his Criminal History Category is I.

### The Advisory Guidelines Sentence

According to the version of the now-advisory United States Sentencing Guidelines in effect at the time the plea agreement was executed (effective date Nov. 1, 2014), Mr. Calovskis is eligible to receive a sentence of 18 to 24 months.

### The Statutory Sentence

The maximum permissible sentence in this case is 10 years. *See,* 18 USC 1030 *et.. seq*. There is no mandatory minimum sentence.

### The Offense Conduct

In or about 2007, computer security experts discovered that a previously unrecognized computer code (a virus) was being used to steal confidential banking information from computers in Europe. In about 2010, the code, nicknamed "Gozi Virus", spread to the United States.

In order to understand Mr. Calovskis' role in the conspiracy, and the way the Gozi Virus worked, a brief technical description is in order. The Internet is comprised of billions of web pages, stored on servers around the world. Those web pages are built using the Hyper Text Markup Language, known as "HTML". An individual surfs the web using a program called a web browser (Internet Explorer, Safari, Firefox, etc.). When that browser connects to one of those billions of pages, it will interpret the HTML code and present to the user a web page.

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 3

For all its complexity in design, the Gozi Virus worked in a simple manner: when an infected computer connected to a financial website, the Virus collected banking data such as user names, account information, passwords, and other security information from that infected computer and transmitted that data to others who used it to access accounts and transfer funds out of those accounts. A "web inject" is a small bit of computer code that makes slight modifications to the HTML code of the original website. In essence, a web inject customizes the Gozi Virus for a particular website. Those modifications will prompt the user to enter additional information, such as secondary security information, including mother's maiden name, or the street the user lived on as a child, and would transmit that additional data to the thieves. The thieves could then use that data to access the accounts.

Mr. Calovskis' role in the offense was minimal considering the magnitude of the entire Gozi Virus conspiracy. He pleaded guilty to writing a web inject in exchange for approximately $1,000. He did not create or write the Gozi Virus, he did not participate in collecting data from infected computers, and he did not personally use that data to access financial institutions.

**Time Served Is The Appropriate Sentence**

A sentence of time served would be a *de facto* sentence of 20 months, well within the advisory guidelines range in the plea agreement, and in excess of the range specified in the Pre-Sentence Report. Deniss spent over 10 months in jail in Latvia[1] while contesting extradition, and spent the last 10 months in the MCC. The Bureau of Prisons will likely not give Deniss credit against any sentence for the time spent in Latvia absent a specific directive from the sentencing judge, and even that credit is questionable. As one sentencing expert advised the defense, BOP does not have a provision or rule covering jail time credit for foreign jails. Even if this Court issues a directive, there is no guarantee that the BOP will give Deniss credit for all the time spent in jail in Latvia. In fact, even if BOP credits Deniss for the time spent in jail in Latvia, it could take months for BOP to gather and translate the documents BOP requires to establish the exact amount of time to be credited. A sentence of time served would in effect be a sentence of 20 months, but would ensure Deniss receives credit for all time served in relation to these charges.

Under 18 USC § 3553, a sentencing court is obligated to impose a sentence that is sufficient, but not greater than necessary, to comply with the requirements of subsection (2) of § 3553 (a). In accordance with subsection (2), the sentencing court must consider the following factors: the seriousness of the offense; the need for deterrence; the need to protect the public; the need to provide the defendant with education or training; the kinds of sentences available; the range of sentences according to the guidelines; any pertinent

---

[1] The original documents from the Latvian Authorities showing the amount of time Deniss spent in jail in Latvia are attached, along with their English translations.

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 4

policy statements; the need to avoid sentencing disparities among similar defendants with similar cases; and, where applicable, the need to provide restitution.

In order to properly assess these factors as they relate to Mr. Calovskis, a brief personal history is in order. As the PSR states, Mr. Calovskis was born in Riga, Latvia, the sole child between his father, Oleg Calovskis and his mother, Yelenna Calovskis. His mother had another child before marrying Oleg, but Mr. Calovskis is not close with his half-brother.

Mr. Calovskis's parents provided him with a stable and supportive household. His mother was a telephone operator, now retired and living on a small Government pension, while his father was an engineer at a local telecommunications company. When Deniss was a child, his father brought home the family's first personal computer, and Deniss recalled playing computer games on the now-ancient 3.5 inch floppy disks. As Deniss entered the Latvian equivalents of middle and high school, the internet grew and became much more accessible. This sparked his curiosity in computer science and website design and development, leading Deniss to study computer science at Riga Technical University. A copy of his transcripts and an explanation of those documents is attached in both English and Latvian.

Following his undergraduate degree, Deniss obtained his Master's Degree in Logistic Science at Riga Aeronautical Institute. After graduation, he worked as an IT specialist for a private company for a short period of time, and then from 2006 through 2008 he worked as an IT specialist for the Latvian Social Security Administration. He also owned a company that developed web sites, and owned a motorcycle garage. Prior to his extradition in this case, Deniss had a computer security company, and worked as an IT specialist for the Latvian Medical Association.

Deniss is currently engaged to Natalia Kiruchima. They met in 2011, but have put their engagement on hold pending the outcome of this case. Deniss intends to marry Ms. Kiruchima when he returns to Latvia.

On December 4, 2012, Deniss was arrested while at home. The Latvian police stormed his family apartment by rappelling down from the roof of the building and shooting tear gas into it, while at the same time other officers kicked in the door and threw him and his parents to the ground. He was hooded and removed to a police station, where Latvian police and FBI agents interrogated him.

After being charged with the crimes in the indictment, Deniss spent the next 10 months in the Riga Central Prison under extremely harsh conditions. Inmates at Riga Central spend 23 hours per day in their cells, with one hour for outdoor exercise. They are permitted one shower per week, one personal 5 minute telephone call per week, and a one hour family visit each month.

Deniss challenged the extradition request both in Latvian courts and at the European Court for Human Rights. After 10 months of litigation, Deniss was released

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 5

from Riga Central pending a determination of his challenge. A translated copy of his record of detention, signed by Lt. Col Ãdamsons, is attached as an exhibit. It shows he was in the Riga prison from December 4, 2012 to October 10, 2013, slightly more than 10 months.

During the period after his initial release, Deniss was unable to work, given the potential extradition hanging over his head, so he devoted himself to humanitarian projects in Riga. One of his endeavors, Stopbedres.lv, was a website he developed allowing citizens to upload photos of the potholes so that the Riga City Council could send out repair crews.

Deniss also helped to organize a project to clean and restore the airplanes on display at the Riga Aviation Museum, and organized community outreach programs for Latvian youth. As he told reporters in an interview regarding his extradition:

> I'm willing to help people and become useful to our society. Our country has many problems, but not all are solved…I would like to start to solve other problems, such as waste, children's playgrounds, lighting, etc.

Ultimately, the ECHR ruled that he should be extradited. He spent another week in custody between his second detention and his return to the United States on February 13, 2015, and he was transported to the United States on February 13, 2015. He has been incarcerated at the MCC since he arrived in the United States. In total, he spent approximately 10 ½ months in Riga Prison while contesting extradition and awaiting travel to the United States.

During his stay at the MCC, Deniss has participated in the Suicide Prevention Program, where he monitored fellow inmates classified as "at risk" for suicide. He also obtained his U.S. General Education Diploma with a mathematics score in the 95th percentile.

In this case, a sentence of time served would satisfy all the factors of § 3553. In looking at the nature and circumstances of the offense under 3553 (a) (1), Mr. Calovskis candidly admitted his role in this conspiracy. He wrote a small piece of code that was used in a very large conspiracy involving a very complex computer virus. Deniss did not create or propagate the Gozi Virus, he did not profit from the ultimate frauds committed by the creators and users of the Virus, and was not involved in collecting or using the data generated by the Virus to siphon money from individual accounts. Instead, in exchange for a relatively small sum of money, he wrote a web inject. Deniss has spent over 18 months in jail, in two countries, had his life put on hold for three years, and has earned the stigma of a felony conviction, all for about a thousand dollars. Certainly, in light of his relatively minimal involvement in a wide-ranging conspiracy, and the amount of time he has spent in jail to date, time served would be a reasonable sentence.

With regard to the the second set of factors under 3553 (a) (1), namely, Deniss' history and characteristics, these factors also support a sentence of probation. First, Mr.

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 6

Calovskis has no criminal history. Moreover, as shown by the PSR, and the attached letters from in support[2], the offense conduct in this case represents an aberration in an otherwise law-abiding life. A review of these letters reveals the true nature of Deniss's character: he is a devoted friend and son. These traits, amply affirmed by all of the writers, show that time served is the appropriate sentence.

Svetlana Rubene and Cristina Griga, friends of Deniss, both comment on his social activism and sincere desire to help his community. They note his work on the pothole website, his devotion to his parents and now to his widowed mother, and his work at the Aviation Museum. Both also mention how well Deniss treats others, including his compassion and respect for other people. Roman Drits also writes about Deniss' devotion to his family, and his great relationships with friends and teachers.

Maxim Shipilov, a friend for 5 years, also refers to Deniss' caring for his mother. Mr. Shipilov values Deniss' friendship because he listens attentively and gives good advice. Similarly, Naila Kolcina, a fellow student at Riga Aeronautical Institute, echoes Mr. Shipilov's comments about listening and giving advice, and also mentions Deniss' love of talking about philosophy. Both Naila and Deniss share an affinity for Schopenhauer.

Alexey Makarovich has known Deniss since early childhood, sharing a desk in school. Alexey notes that Deniss is responsible with his studies and his work, and was always willing to help others.

Vladimir Kornienko, another friend from Deniss' neighborhood, echoes other comments, stating Deniss is a good friend, and willing to help out when necessary. According to Vladimir, Deniss is well educated and very knowledgeable on many topics.

Zarema Ryabikina, an elderly neighbor, has known Deniss' family for 30 years. She describes him as a modest and kind man, well bred and willing to help the elderly. She describes an incident where her car was stuck in the snow, and Deniss helped clear the snow, help her with her car, and carry her packages for her. She notes that not all young people would take the time to help the elderly

Jelena Calovskis, Deniss' mother, tells how Deniss was a good student, respected by both teachers and classmates. The family visited museums, art exhibits, attended the theater, discussing what they saw and learned. It is apparent that Deniss grew up in a home that valued education and culture, with parents who taught him respect for everyone. Now, Deniss helps his widowed mother with her bills.

Former employers have similarly positive things to say about Deniss. Elena Vikmane, the owner of INSAT, an alarm company, writes that Deniss was responsible

---

[2] Those letters will be send as a separate attachment on ECF and will be attached to the courtesy copy of this letter as well. Many of them were written in Latvian or Russian; both the original and the translated version are attached.

and professional, always willing to help out, and even helped save the company's data at one point. Elena valued Deniss so highly she writes she is ready to re-hire Deniss at any time.

Peteris Apinis, the President of the Latvian Medical Association, writes that Deniss worked for him in 2014. The Latvian Medical Association is responsible for certifying Latvian Doctors, and administering continuing education programs for them. Deniss helped to develop the Latvian National Health Portal, administered the voting system for the Latvian Annual Award in Medicine, and helped the Association to upgrade its database. According to Mr. Apinis, Deniss was in charge of these "critical projects", and his work on them was a major contribution to the development of the public health information system in Latvia. As did other employers and friends, Mr. Apinis viewed Deniss as orderly, dedicated, hardworking and professional.

Another employer, Oleg Metelkovs, hired Deniss to operate the monitoring center. Mr. Metelkovs said that Deniss was a conscientious employee, helpful to others, even in his free time.

In light of this outpouring of support, there is little question that Mr. Calovskis' history and characteristics support a sentence of time served. He has no prior criminal conduct, he is a kind and generous man, and his work ethic is outstanding. Relatives, friends and employers all attest to his diligent work habits and his devotion to his widowed mother.

This Court must also consider the factors listed in §3553 (a) (2) when imposing sentence. Those factors are the need for the sentence to reflect the seriousness of the offense; to promote respect for the law, and provide just punishment; to provide deterrence; to protect the public from further crimes of the defendant, and to provide the defendant with any needed rehabilitative programs. As noted above with regard to the factors in 18 USC § 3553 (a) (1), the factors listed in subsection 2 also support a sentence of time served.

With regard to the seriousness of the offense, as noted above, while the underlying charges were serious, Deniss' involvement was less so. He wrote a web inject, not the underlying virus, and was not involved in the other aspects of the charged conspiracy. While he does not deny his involvement, when considering the breadth of the Gozi Virus conspiracy, it is clear Deniss was minimally involved in the overall conduct.

Time served would also promote appropriate respect for the law. Deniss is 30 years old, with no prior convictions. He admitted to his conduct as part of the conspiracy, but had minimal involvement, made little money, and was a participant for a discrete act. Deniss is not getting off scot-free: to the contrary, he will have to live with the stigma of a felony conviction and its attendant shame and disgrace. In addition, this Court should keep in mind that Deniss has been incarcerated under these charges for a total of 20 months, under relatively harsh conditions for a defendant accused of a non-

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 8

violent offense.  The requested sentence, for an otherwise law-abiding, hard-working man, with no prior record, would indeed promote respect for the law.

Time served provides just punishment in this case.  20 months in jail is eminently appropriate for Deniss, who has no criminal record.

With regard to deterrence, the same argument applies.  The requested sentence in this case provides ample deterrence to others considering criminal activity.  Certainly, the knowledge that one could be taken from one's home country, and spend a total of 20 months in jail, for writing a few lines of computer code, should act to deter other individuals from committing similar crimes.

Protecting the public is a non-issue. Deniss is a hard-working, respectful man who takes care of his mother.  He committed no act of violence and was minimally involved in the charged conspiracy.  In addition, as Deniss' own letter shows, he realizes the enormity of the mistake he made by participating in this conspiracy.  He has expressed his desire to work, raise a family, and continue his public service activities.  He does not represent a threat to society.  The public needs no further protecting from Deniss.

Similarly, rehabilitation is not an issue for Deniss.  He recognizes the wrongful nature of his conduct, understands the consequences of his actions, and is extremely unlikely to commit another criminal act.  Moreover, during the pendency of this case, Deniss began his social activism, showing this Court he understands that his computer knowledge can be used for socially acceptable ends.  In addition, his work with at-risk inmates while incarcerated at MCC is further evidence of his efforts towards rehabilitation.

As the accompanying letters make clear, Deniss is no hardened criminal.  To the contrary, he is a well-educated, respectful and hard-working man. Given his history of altruistic behavior, his dedication to family and friends, and his solid work history, further incarceration would be an inappropriate punishment in this case.  While the guidelines prescribe a range of 18-24 months, the facts in this case militate in favor of a lesser sentence, with no further incarceration.

The Pre-Sentence Report calls for a sentence of 16 months, the high end of Probation's calculated guidelines range.  Probation justifies this request, saying that Deniss is "surely responsible for much more harm than the guidelines range suggests." In making this statement, the Probation Department ignores the facts, even those stated in its own report.

For example, while the PSR recites the allegations contained in the indictment, apparently arguing that those allegations support an upper range sentence, those allegations boil down to two facts.  With regard to Deniss' conduct in this case, the indictment alleges that he had created web injects, and six months later, sold a web inject. Although the PSR contains fifteen paragraphs detailing the entire conspiracy, those are the only factual allegations against Deniss.  Based on the PSR itself, Deniss offered web

Hon. Kimba M. Wood, United States District Judge
November 25, 2015
Page 9

injects in June of 2010, and sold one web inject in January of 2011. There are no other allegations against Deniss. Despite Probation's assertion that Deniss was "surely responsible for much more harm", the facts themselves do not support Probation's claim.

According to *Gall v. United States*, 552 US 38 (2007), while sentences that are within the Guideline range for a particular defendant are presumptively reasonable, there is no corresponding presumption of unreasonableness for sentences that are below that range. As the Supreme Court determined in that case, a sentence of probation, well below the recommended Guidelines range of 30 to 37 months, was not unreasonable. So long as the sentencing judge starts with a correct Guidelines analysis, if a consideration of all the § 3553 factors leads a judge to conclude that a sentence below that Guideline range is reasonable, then the judge must simply ensure that the justification for that deviation is sufficiently compelling to warrant it.

Here, Deniss presents compelling factors warranting the requested sentence. He has fully accepted responsibility for his actions. He has shown, over much of his adult life, that he is a law-abiding and productive member of society. Given his lesser role in this conspiracy, the requested sentence would be fair and just.

While the requested sentence is effectively time served, this Court can also sentence Deniss to a total term of 10 months, which will result in the same sentence. As noted, by the date of sentence, Deniss will have spent 10 months in the MCC. In order to avoid the issues arising from crediting Deniss with the 10 months he spent in jail in Latvia, a straightforward sentence of 8 months will accomplish the same goal.

In this case, Deniss accepted his criminal responsibility by pleading guilty. He has accepted, in a timely manner, full responsibility for his actions. Under all the circumstances of this case, a sentence of probation would be sufficient, but not greater than necessary to achieve the goals of 18 USC § 3553, will serve the ends of justice, and will not unduly punish Deniss.

                                      Very truly yours,
                                            -s-
                                      David K. Bertan

DKB
cc:    AUSA Daniel Tehrani (via e-mail)